UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00027-LLK

**DARLENE B. BRYANT**                                                                                             **PLAINTIFF**

v.

**NANCY A. BERRYHILL, Acting Commissioner of Social Security**[1]                       **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets 15 and 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. Docket 13.

Because the administrative law judge's (ALJ's) decision was supported by substantial evidence in the administrative record and was in accord with applicable legal standards, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**Plaintiff failed to prove that her left-knee impairment satisfies the medical criteria of Listing 1.02.**

The ALJ acknowledged that Plaintiff suffers from degenerative joint disease of the left knee, which restricts her to sedentary work with an option to sit/stand every 30 to 45 minutes. ALJ's decision at administrative record (AR), pp. 116 and 118.[2]

Plaintiff claims that her left-knee impairment meets or equals the medical criteria of Listing 1.02 of Appendix 1 of the regulations.

The ALJ found that the impairment does not satisfy the Listing: "The claimant does not satisfy the criteria of Listing 1.02 – Major dysfunction of a joint(s) due to any cause since she does not have a

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.
[2] Plaintiff indicated that this impairment may be remediable by future knee-replacement surgery. AR, pp. 138 and 150.

gross anatomical deformity or instability in her knees or ankles.  She retains the ability to ambulate effectively."  ALJ's decision at AR, p. 117

If Plaintiff shows that her impairment satisfies the clinical criteria of a Listed impairment, she is entitled to conclusive presumption of disability based on the medical evidence alone (independently of any other factor such as age, education, or prior work experience).  20 C.F.R. 404.1525(a).  Because the Listing represents an automatic screening-in of an impairment as per-se disabling, Plaintiff's burden of proving that the criteria of the Listing are satisfied is strictly construed.  See Secretary v. Zebley, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a Listed impairment's] criteria, no matter how severely, does not qualify").

Plaintiff is entitled to a finding of disability if her left-knee impairment results in the following:

1.02 Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

In her fact and law summary, the Commissioner focuses on Plaintiff's claimed ability to ambulate effectively as supporting the ALJ's finding that Listing 1.02 was not satisfied.  Fact and law summary, Docket 20, pp. 3-5.

Effective ambulation is defined in Section 1.00B2b as essentially an ability to walk sufficiently to carry out basic activities of daily living.  According to Section 1.00B2b:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.[3] They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Plaintiff testified that she can walk 100 feet before having to stop and rest and admitted that she does not use any type of ambulatory device. AR, pp. 149 and 314. When asked about her daily activities, she testified that she can dress herself, take care of her personal needs without assistance, drive, and do general house cleaning such as making beds, feeding the dogs and cats, sweeping the floors, mopping, and taking care of the flowers. AR, pp. 146-147.

Plaintiff has not shown that her left-knee impairment renders her unable to ambulate and carry out activities of daily living as required by Listing 1.02. Therefore, the ALJ's finding that the Listing was unsatisfied is supported by substantial evidence.

### The vocational testimony adequately supported the ALJ's finding that Plaintiff can perform her past relevant work.

The ALJ's denial decision was based on a finding that Plaintiff is physically able to perform her past relevant work as a receptionist as she actually performed it and as it is generally performed in the national economy. ALJ's decision at AR, p. 123. The Plaintiff relied on testimony from a vocational expert (VE) in support of this finding. See Ealy v. Commissioner, 594 F.3d 504, 516 (6th Cir. 2010) (A VE's

---

[3] Although not defined in the present Listing 1.02 context, "activities of daily living" (ADLs) generally contemplate routine activities that people tend to do every day without assistance, including "such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills." Section 7.00(G)(5) (hematological disorders); see generally Wikipedia article on ADLs (The concept of ADLs was originally proposed in the 1950s by Sidney Katz. There are 6 basic ADLs: eating, bathing, dressing, toileting, continence, and transferring/walking).

response to a hypothetical question may serve as substantial evidence supporting an ALJ's decision if the questions "accurately portray" the claimant's impairments).

Plaintiff testified, in the VE's presence, that, after standing over 30/45 minutes, her leg starts hurting and she has to sit down and rest for 30 minutes and can then "get up and try it again." AR, p. 149.

The ALJ asked the VE to consider an individual who, among other things, requires an "option to sit or stand every 30 to 45 minutes," to which the VE responded that the individual could perform Plaintiff's past relevant work as a receptionist. AR, pp. 154-155.[4]

Plaintiff argues that the vocational hypothetical was deficient because, while it specified the frequency of the need to alternate sitting and standing, it failed to identify the length of time needed to stand. According to Plaintiff, with prolonged standing, "the [occupational] base for sedentary work [which generally requires 6 hours total of sitting per 8-hour workday] would eventually be eroded." Docket 15, p. 8.

The argument is unpersuasive because Plaintiff did not allege that her primary difficulty is prolonged sitting but rather prolonged standing. See Plaintiff's testimony at AR, p. 149. The hypothetical adequately contemplated the specific limitations Plaintiff alleged. It is immaterial whether these limitations exclude the possibility of erosion of the occupational base for the full range of sedentary work. That concern would have been relevant only if the ALJ had found that Plaintiff is unable to perform past relevant and, therefore, needed to advance the sequential evaluation process to the last step and identify a significant number of other jobs in the national economy she could perform.

Plaintiff argues that the vocational testimony was inconsistent with information contained in the Dictionary of Occupational Titles (DOT). The argument is unpersuasive for 3 reasons: 1) The DOT describes the requirements of various jobs in the national economy and is relevant at the last step of the

---

[4] Plaintiff testified that she "possibly" could do her prior receptionist job if she "had [it] to go back to" – her major concern being, not physical limitation, but the stress of having to look at a computer all day. AR, p. 144.

evaluation process.  In this case, the evaluation process terminated prior to the last step.  2)  There was no inconsistency between the vocational testimony concerning sit/stand option and the DOT.  See Forrest v. Commissioner, 591 Fed.Appx. 359, 2014 WL 6185309 (6th Cir.) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT"). 3) Even if there was an inconsistency between the vocational testimony and the DOT, the obligation of further interrogation "falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief."  Beinlich v. Commissioner, 345 Fed.Appx. 163, 168-169 (6th Cir.2009).

The vocational testimony adequately supported the ALJ's finding that Plaintiff can perform her past relevant work.

**ORDER**

The final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.